**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| **v.** | * | **Crim. Case No.: SAG-06-087** |
| | * | |
| **LAMONT SANDERS,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

* * * * * * * * * * * *

**MEMORANDUM OPINION**

In 2006, Lamont Sanders pled guilty to Count Three, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841; Count Four, possession of a firearm after sustaining a felony conviction in violation of 18 U.S.C. § 922(g); and Count Five, possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). On October 31, 2006, United States District Judge J. Frederick Motz imposed a total sentence of 322 months of incarceration, to be followed by a period of eight (8) years of supervised release. ECF 26. On January 27, 2021, in accordance with Section 404 of the First Step Act, this Court reduced Sanders's sentence to a total of 248 months of incarceration, representing a low-end of the advisory guidelines sentence of 188 months for Counts Three and Four, plus the required 60-month consecutive sentence for Count Five. ECF 129. On December 16, 2020, Sanders filed a pro se Motion for Compassionate Release. ECF 118. His attorney supplemented that motion, ECF 132, and full briefing ensued, to include production of updated medical information. ECF 136, 140, 142, 144. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Sanders's Motion will be denied without prejudice.

## I. LEGAL STANDARDS

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## II. ANALYSIS

The Government concedes that Sanders adequately exhausted his administrative remedies. *See* ECF 136 at 18. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under §

3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."]. This Court has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's determinations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has

a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

Sanders's medical records demonstrate that he has certain medical conditions presently identified by the Centers for Disease Control & Prevention ("CDC") as conditions that can increase a person's risk of COVID-19 complications. *See People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last visited April 13, 2021), https://tinyurl.com/y9chuzkm [hereinafter "CDC Underlying Condition Risk Factors"]. This Court notes, however, that compassionate release decisions in the last thirteen months of the COVID-19 pandemic have, unfortunately, largely been creatures of timing. Judges, most of whom have no medical training, have been charged with predicting which

inmates are at "compellingly elevated" risk of severe complications from an utterly unpredictable virus that can kill young, entirely healthy individuals while leaving older, medically vulnerable individuals asymptomatic or relatively unscathed. The efforts of the CDC to advise the public of medical risk factors for severe complications have resulted in ever-changing guidance. A judge might issue an opinion one day relying on the most up-to-date CDC information, only to have that information altered the following date to increase or lessen the amount of risk posed by a particular inmate's diagnosis. Now added to the muddled mix is the emergence of several variants of the virus, along with the development of what appear to be highly effective vaccines, approved by the Food and Drug Administration for emergency use. As best we know today, the vaccines dramatically reduce most recipients' risk of severe complications or death from COVID-19 infection, even as to many of the more prevalent variants. Like everything else with this virus, however, there are no guarantees. A limited number of persons do not respond effectively to the vaccines and do not develop the anticipated degree of immunity. Some of the variants appear better controlled by the vaccines than others. Judges, then, still have to make their best assessments of the risk posed to a particular individual, taking into account all relevant factors including the individual's medical conditions and vaccination status.

This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the "extraordinary and compelling reason" required to further consider compassionate release. *See, e.g.*, *United States v. Gomez-Vega*, Cr. No. 19-1382-001 KG, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that Mr. Gomez-Vega's conditions constitute extraordinary and compelling

reasons for compassionate release."); *United States v. Leach*, Cr. No. 3:14-cr-229-MOC-DCK-10, 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) ("Defendant therefore can demonstrate an extraordinary and compelling reason as required by § 3582(c)(1)(A)(i), but the facts that support it are likely to soon change once she is vaccinated."); *United States v. Mendoza*, Cr. No. 06-167, 2021 WL 1312920, at *8 (W. D. Pa. April 8, 2021) ("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020."); *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated the inmate's risk such that COVID-19, despite the inmate's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Sanders will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. As of today, Sanders has received the first dose of the two-dose Pfizer vaccine, which affords him some, but not yet complete, protection. Obviously, if he is not offered the second dose in a timely manner, he will be permitted to renew his motion for compassionate release, given the basis of this Court's ruling. On the present record, though, this Court concludes that Sanders's vaccination status removes his other medical conditions from the category of risk constituting an "extraordinary and compelling reason."

The remaining question for the Court, then, is whether absent that medical justification, Sanders's arguments regarding the disproportionate length of his sentence and his rehabilitation amount to an "extraordinary and compelling reason" justifying further consideration of his release. Recently, in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit addressed a somewhat similar issue, considering consolidated appeals in cases in which courts had considered as "extraordinary and compelling reasons" the length of the defendants' "stacked" sentences under 18 U.S.C. § 924(c) and the disparity between those sentences and those would be imposed after Congress, in the First Step Act, ended the practice of § 924(c) "stacking." The district courts granted the defendants' motions and reduced their sentences, reasoning that the reductions were not inconsistent with any applicable policy statement by the Sentencing Commission because the Sentencing Commission has not issued any policy statements since the First Step Act was enacted on December 21, 2018. *Id.* Because Congress ended the practice of § 924(c) stacking, there is no question that the defendants discussed in *McCoy* would have received dramatically lower sentences if sentenced today—by a full 30 years. The district courts considered that fact, in addition to the individualized circumstances presented by each defendant, including their "exemplary prison records and other evidence of rehabilitation," and concluded that their sentences should be reduced to time served. *Id.* at 279. The Fourth Circuit upheld those rulings. *Id.*

The argument made by Sanders is distinguishable, as there has been no intervening act of Congress, analogous to the elimination of § 924(c) stacking, with a direct impact on his existing sentence. His current sentence of 248 months represents the low end of the advisory guideline range for his three offenses of conviction, using the present-day guidelines. His argument, though, is that prosecutors today would not require him to plead guilty to all three charges of conviction and likely would not seek a sentencing enhancement under 21 U.S.C. § 1951. He also contends

that judges today would be more likely to vary downward from the career offender guidelines, citing national statistics. In support of his arguments, Sanders cites several examples of recent cases in which defendants with similar histories charged with similar conduct received significantly lower terms of imprisonment. ECF 132 at 8-9.

Each case is different, however, and it is difficult to predict how a prosecutor would evaluate Sanders's particular case in determining what plea offer to make. For example, Sanders had a robust criminal history including convictions for narcotics distribution, armed robbery and attempted robbery at the time of this federal conviction, leading to the accumulation of 22 natural criminal history points.[1] He qualified as both a career offender and an armed career criminal, and was on probation at the time of the federal offense. Moreover, he possessed not just one firearm, but multiple firearms, increasing the danger he posed to the community. That record could have made a prosecutor less generous in terms of a plea offer, although this Court agrees that it is likely that the case would proceed somewhat differently today.

Moreover, this Court has already clearly explained its evaluation of Sanders's prison record in its opinion granting his Section 404 motion for reduced sentence:

> Sanders asks the Court to focus on the second factor, his history and characteristics, and especially his behavior throughout his incarceration, during which he has earned his GED, completed an array of meaningful programming, been transferred to a lower security classification, and served as a mentor to younger incarcerated individuals and to family members outside the prison walls. ECF 112. The Court recognizes Sanders's meaningful accomplishments during his term of imprisonment, and the support from his family and friends expressed in their letters attached to his motion. ECF 112-7 through 112-15. However, the Court also acknowledges that Sanders's disciplinary record while incarcerated has been less than stellar at times. He has a long series of sanctioned incidents between 2007 and 2018. ECF 121-1. Several of them are less serious infractions, but he has received more significant discipline, on multiple occasions, for possession of weapons and for narcotics offenses—incidents that are particularly troubling given the reason for

[1] Anything greater than 13 criminal history points places a defendant in the highest Criminal History Category, VI. Sanders nearly doubled that amount.

> his incarceration in the first place. *Id.* In fact, it is the seriousness of some of his infractions that caused this Court to defer consideration of Sanders's motion for a period of six months, to assess whether he could complete two years with a clean disciplinary record. Sanders incurred no further infractions during that window, demonstrating his ability to comply with regulations and conditions when he is motivated to do so. Ultimately, then, while cognizant that there is still some risk, the Court views the history and characteristics of the defendant as weighing in favor of a sentence reduction.

ECF 128 at 4-5. This Court, then, would not categorize Sanders's prison record as "exemplary," like those defendants who received compassionate release in *McCoy*.

In the end, while this Court believes it would have the authority to find a combination of the length of Sanders's sentence and his prison record/rehabilitation to constitute an extraordinary and compelling reason justifying further consideration of compassionate release, it does not make that finding on the current record. Sanders's two-year period with a clean disciplinary record sufficed to give this Court sufficient assurance to grant his earlier-requested reduction to a 248-month sentence, but does not yet, in this Court's view, amount with the length of his sentence to an "extraordinary and compelling" showing warranting immediate release to home confinement. The Court does not foreclose, however, the possibility that further demonstration of truly rehabilitated conduct could alter its view of the totality of the circumstances. The Court commends Sanders's ongoing stretch of good behavior—while his two years of exemplary conduct is not enough to outweigh the other factors outlined in this decision, that does not lessen its significance in the Court's eyes. Accordingly, Sanders will be permitted to refile his motion one year from the date of this order if he has maintained an infraction-free disciplinary record to present, with other relevant evidence, for the Court's consideration.

Sanders's Motion, ECF 118, will be denied by separate order, with leave to refile the motion if the conditions discussed herein are met.

DATED: April 15, 2021

/s/
Stephanie A. Gallagher
United States District Judge